## George H. McIntyre, administrator &c. *vs.* The New York Central Railroad Company.

In an action by the administrator of a person whose death was caused by the wrongful act or negligence of the defendant, to recover damages for such wrongful act, &c. the only legitimate element of damages is the pecuniary loss *to the next of kin,* resulting from such death.

Where the person killed was a female forty-eight years of age, a widow, with three children, all of whom were over twenty-one years of age, and had left her; who was capable of earning a dollar a day by her labor, but who left only a small amount of property, and died intestate; and the jury, in an action brought by her administrator, for the benefit of the next of kin, found a verdict in favor of the plaintiff for $3500: *Held* that the damages were excessive; and a new trial was ordered, unless the plaintiff would consent to remit $2000 of the damages, reducing the verdict to $1500.

McIntyre *v.* New York Central Railroad Company.

APPEAL from an order made at a special term, denying a motion for a new trial. The action was brought to recover damages for the death of Susannah Knight, the plaintiff's intestate, occasioned, as claimed, by the negligence of the defendants' employees, upon its railroad, in November, 1859. At the first trial of the action, the plaintiff was nonsuited. On appeal, the court, at general term, granted a new trial. (*See* 43 *Barb.* 532, *S. C. where the facts are stated.*) On the second trial, before Justice WELLES and a jury, at the Monroe circuit, in January, 1866, the jury found a verdict in favor of the plaintiff for $3500. A motion for a new trial having been made, upon the judge's minutes, and denied, the defendant appealed to the general term.

*S. R. Strong,* for the appellant. (Other points omitted as immaterial, under the view taken by the court.) V. The damages allowed by the jury are greatly excessive, and the appeal from the order denying a new trial should prevail. 1. No damages arose from the death of the intestate to her next of kin, who were her children, in respect to the title to property she then owned; for her children were entitled to that, under the statute of distributions, if any should remain after the payment of debts and funeral expenses, &c. 2. It is manifest that had the intestate lived, she would not have acquired any property of moment, from which her children would have derived benefits. For the eight years she had been a widow, she had not accumulated any property. All she owned at her death, which was very little, came from her husband; and her labor for, and gifts to her children, during that period, were of inconsiderable pecuniary value. In respect to her services for her married daughter, they were, doubtless, in a pecuniary view, more than compensated for by her support; and her services, in the nature of property for her absent sons, consisted in occasionally making for, and sending them clothing, valuable, doubtless, to any considerable extent, only as tokens of remembrance and affection. The

prospect of her acquiring property in the future, had she lived, to benefit her children, in view of her age, was certainly not equal to what it had been in the past ; and it was hardly equal to the prospect of their being subjected to expense for her support. 3. It can not be perceived that the intestate, if she had lived, could have been of any pecuniary benefit to her children, in any sense in which those words, as used in the statute relating to the case, can properly be regarded, in any other way than as above named, except by instruction and advice. And in regard to pecuniary benefit of that character, if it is susceptible of any rational measurement—if it is not to be left within the statute limit of damages in all cases ; to the wildest conjecture, wholly uncontrolled by the court—the sum allowed in the present case is extravagant and unwarranted. All the children were adults, in business on their own account, with characters formed, and it could not fairly be anticipated that they would be in future greatly benefitted in that way.

If there had been minor children, living with, and under the care of the intestate, as in *Tilley* v. *The Hudson River Railroad Co.*, (24 *N. Y. Rep.* 471 ; 29 *id.* 252,) the case would be widely different. In that, the only question made by the defendant related to the rule of damages.

VI. It is apparent from the opinion of the court, on setting aside the nonsuit, and granting a new trial, in this case, that the case, when formerly before the general term, was regarded by the court (the evidence being substantially the same as now,) as not warranting any considerable damages ; and it is believed the amount of the verdict can not fail to be viewed as strikingly disproportionate to, and in excess of the actual damages, and that a new trial should be granted, for that reason. (43 *Barb.* 532, *S. C.*) The statute is a highly beneficial one, properly administered ; but if juries shall be left to their own feelings and an unregulated discretion, instead of being required to follow the evidence and the

direction of the statute, as to the damages, it will become often the means of great injustice.

*William F. Cogswell,* for the respondent.

*By the Court,* WELLES, J. One of the questions presented on this appeal is whether the damages found by the jury are excessive. That was one of the grounds upon which the motion for a new trial was made at the special term, and this appeal is from the order denying that motion.

Upon a careful review and consideration of all the evidence given at the trial, I am unable to resist the conviction that the verdict against the defendant for $3500 greatly exceeds the amount which the plaintiff was entitled to recover in the light most favorable to him in which the evidence can be viewed.

By the common law the cause of action would not have survived to the representatives of the deceased. If the injury to Mrs. Knight had not resulted in her death, the jury would have been permitted to entertain several considerations on the question of damages, which are excluded by the statute which gives the action in case of the death of the person injured. Among them is the personal suffering produced by the injury, which is often an element that enters largely into the mind of the jury in such cases—and where the wrongful act of the defendant is accompanied with malice or gross negligence, it is competent for the jury to give exemplary damages, where the person injured survives the injury ; while no such consideration can lawfully affect the verdict in respect to its amount, where the death of the party injured ensues. In the latter case, the verdict for the plaintiff is expressly limited by the statute to such damages as are compensatory only, and with reference to the pecuniary injuries resulting from the death, to the wife and next of kin, or to the next of kin of the deceased. In other words, the jury are to compensate by their verdict, not the person killed, but the wife and next of kin of such person, for such pecu-

McIntyre *v.* New York Central Railroad Company.

niary injuries *as result to them* from the death of the person killed, in case such person has a wife at the time of such death, and in case such person is a female without a husband, as result to her next of kin. The language of the statute regulating the rule of damages in such cases, is as follows : "And in every such action, the jury may give such damages as they shall deem a fair and just compensation, not exceeding $5000, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person.". (*N. Y. Sess. L. of* 1849, *chap.* 256, § 1, *p.* 388.)

In the present case the plaintiff's intestate was a lady over forty-five and nearly fifty years of age, and had been a widow several years at the time of her death. She left a small amount of property, and died intestate. The witnesses who were best acquainted with her, testified that she was very intelligent and industrious ; that she was a stout, strong, healthy woman ; that her services readily commanded the price of one dollar per day besides her board. It appeared that she left three children, one daughter and two sons. The daughter and one of the sons were married and settled in life —all three of her children were over twenty-one years of age, and had all left her. They were bound by law to maintain her in case of her inability to support herself, if she had lived, which might involve them in a large and long continued expense. Supposing her age at the time of her death to have been forty-eight years, which would be a fair conclusion from the evidence, her expectation of life, according to the North-hampton tables was between nine and ten years. She might have lived beyond that period and might have died within it. Experience, however, for more than a century, has proved that to have been her fair expectation of life, in view of the uncertainty of the length of its continuance.

It seems to us that it would be preposterous to conclude that a woman of her age and circumstances could do very much more than support herself comfortably for nine or ten years, and that the probabilities are at least equal that she would,

McIntyre *v.* New York Central Railroad Company.

before that period elapsed, have become a pecuniary charge upon her children. There is no legitimate element of damages in the case, other than the pecuniary loss to her next of kin, resulting from her death. They doubtless suffered mental anguish from her sudden and violent death, and it would be natural that their hearts were made to bleed over the mournful circumstances attending it. But none of these were pecuniary injuries for which the law affords a pecuniary compensation.

The amount of the verdict affords reason to believe that the jury were influenced by forbidden considerations like those referred to, in coming to the conclusion that the next of kin of the deceased had sustained pecuniary damages by reason of her death, to an amount so glaringly out of proportion to any thing which the evidence would justify.

I have carefully reviewed and considered the various exceptions taken at the circuit on behalf of the defendant, and have not been able to discover any error in those respects for which a new trial should be ordered.

But for the reason that the damages found by the verdict are greatly excessive, we are of the opinion that the order denying a new trial should be reversed and a new trial ordered, with costs to abide the event ; unless the plaintiff or his attorney, within sixty days after service of a copy of the order to be entered hereon, serve upon the defendant's attorney a stipulation in writing, remitting $2000 of the damages found by the verdict and reducing the same to $1500 ; and in case such stipulation shall be served within the time mentioned, the motion for a new trial be denied, and the plaintiff to be at liberty to enter and perfect judgment for the last mentioned sum, with interest thereon from the time the verdict was rendered, together with costs, including the costs of this appeal.

[MONROE GENERAL TERM, March 4, 1867. *Welles, E. D. Smith* and *Johnson,* Justices.]