Potter, Adm'r, etc., vs. The Chicago and Northwestern Railroad Company.

POTTER, Adm'r, etc., vs. THE CHICAGO AND NORTHWESTERN
RAILROAD COMPANY.

*Injury causing death of child: Excessive damages.*

1. A verdict against a railroad company for $3,775, for negligently causing·
the death of a girl about ten years old, is set aside as excessive, the
evidence showing no ground for extraordinary expectations of pecuniary
benefit from continuance of life.
2. This court will not, in such a case, allow a part of the damages to be re-
. mitted, and affirm the judgment as to the remainder.
3. A verdict in the case for more than $2,000 should be set aside.
4. On proof of the child's disposition, and that the "circumstances and
health of the parents were poor," the judgment would not be reversed,
because the jury were allowed to consider, in estimating damages, the
. parents' reasonable expectation of pecuniary benefit from continuance
of her life *after* she should become of age.

APPEAL from the Circuit Court for *Jefferson* County.
The case is sufficiently stated in the opinion.

*Enos & Hall*, for appellant, cited *Curtis v. R. & S. R. R.
Co.*, 18 N. Y., 542; *Franklin v. South Eastern Railway Co.*,
3 Hurl. & Norm., 212; *Dalton v. The Same*, 93 Eng. C. L.,
296; *Duckworth v. Johnson*, 4 Hurl. & Norm., 653; *Quin v.
Moore*, 15 N. Y., 434; 33 N. J. Law R., 188; 33 Pa. St.,
318; 31 id., 372; *Caldwell v. Brown*, Am. Law Reg., Oct.,
1867; 24 N. Y., 471; 14 id., 310; 15 id., 434; 33 id., 642;
30 N. J., 188.

*Hopkins & Foote*, for respondents.

PAINE, J.   The last decision of this court in this case, on
a former appeal, established two propositions : First, that
the jury were not limited, in estimating the pecuniary loss
of the parents, to the value of the services of the child during
her minority, but might give damages based upon a reason-
able expectation of the parents of pecuniary benefit from
the continuation of the child's life after she should become

of age.   Second, that such reasonable expectation could not be taken for granted, or " guessed at," by the jury, but must be shown to have been warranted by the evidence. And the judgment was reversed because there was no evidence showing the condition and circumstances of the parents, so as to raise a reasonable presumption that they might need and receive aid from their daughter after her minority.   The only additional evidence offered at the last trial, upon this point, was the general statement that the " circumstances" and " health" of the parents were "poor." No particulars were given, nor were the ages of the parents shown.   And the counsel for the appellant urges that there is no more proof of a reasonable expectation of pecuniary benefit to the parents after the child should attain her majority, than there was before; and that it would not only be necessary to show that the parents might need such aid, but also that the child, if she had lived, would then have the disposition and ability to furnish it.   But it is obvious, that in respect to the last point, all the proof was given that the nature of the case admits of.   The character and disposition of the child while living, were shown, and this was all that could be done.   And the rule being established, that such reasonable expectation of aid from a child after its minority may be made the basis of damages, it would follow as a matter of course, that after all the proof was offered that, from the nature of the case, it was possible to offer, the question would have to be left to the judgment and discretion of the jury.  ·

But the fact that the question is to such an extent removed from the realms of certainty, by its very nature, would seem to furnish a good reason why there should be some strictness in requiring such facts as are capable of proof, tending to throw light upon the matter, to be shown. And it would have been much more satisfactory, if, instead

of the general statement that the circumstances and health of the parents were "poor," some details had been given as to the degree of their poverty, and whether their poor health was of a transient character, or whether they were both afflicted with chronic diseases, and also as to their ages. But as the counsel for the defendant did not see fit to avail himself of his privilege of cross-examination to call for these details, this court would probably not be authorized to reverse the judgment upon the same ground that it did before, inasmuch as there was testimony, though of a general and not very satisfactory character, to supply the defect then indicated.

But I think the court below erred in not granting a new trial for excessive damages, and that the judgment must be reversed for that reason. The verdict was for $3,775.00, and it seems impossible to sustain it except upon the theory that the statute under which this action is brought, intended to give the jury an uncontrollable discretion to find, in all cases, such damages as they might think proper, not exceeding five thousand dollars. That such was its design has not been decided in any case that I am aware of. It is true, that in some cases quite general language has been used, to the effect that in this class of actions the damages depended very greatly on the judgment and discretion of the jury. But this language has been used, not with reference to the power or duty of the court to set aside their verdict for excessive damages, but with reference to the uncertainties growing out of the very nature of the subject. Such was the case in *Railroad Company v. Barron*, 5 Wall. (U. S.), 90. Yet the court in that case say expressly, as in fact has been uniformly decided, that the statute restricts the damages, not only as to the amount, but as to "the principles which are to govern the jury." This is based upon the provision limiting them to the "pecuniary loss" of the

persons for whose benefit the action is brought. This pecuniary loss the jury is to estimate from the facts proved. Such is the language of the court in *Chicago v. Major*, 18 Ill., 360. And this court has decided in this case, as already shown, that the verdict of the jury must be based upon the evidence. Not that the evidence must create a certainty beyond what is possible in the nature of things, but that in so far as the estimate relates to the future, it should show a reasonable probability that the pecuniary loss would be equal to the amount found by the verdict. I infer, therefore, that there is nothing in this statute that removes these verdicts from the supervisory control of the courts, to be exercised according to the established principles applicable to that subject. Perhaps the true rule to apply to such cases would be that applicable in actions for personal injuries where vindictive damages are not allowed. In such cases, courts will not set aside the verdict for excessive damages, unless they are so excessive as to be evidence of prejudice, partiality or corruption in the jury. That rule was adopted in an action of this character, in *Oldfield v. Railway Co.*, 3 E. D. Smith, 109, 110.

Applying that rule to this case, I think this verdict is excessive to that extent. Not that it indicates corruption, but prejudice or partiality in the jury, and that they, through a somewhat natural indignation at the company for its carelessness in causing the death of the child, really gave vindictive damages, losing sight of the question to which they ought to have confined themselves. For how, upon this evidence, can it be said that it is reasonably probable that these parents have sustained pecuniary loss to the extent of $3,775.00 by the death of their child? Counsel did not suggest any theory tending to support such a conclusion, and I think none can be suggested. It is contrary to the almost universal experience of mankind. Perhaps a comparison of

this verdict with others in this class of actions, will serve better to illustrate its excessive character, than any other mode.   In the case of *Oldfield v. R. R. Co.*, last cited, the action was brought for the negligent killing of a little girl, six years and ten months old.   There was evidence that she was " a remarkable proficient in music," which rendered it much more probable that she would acquire wealth, than that an ordinary girl, not having that accomplishment, would do so.   The verdict was for $1,300, for the benefit of the mother, who was the next of kin.   A motion was made to set it aside as excessive.   The court admitted that it was excessive—that it was a large verdict—but thought it was not so excessive as to evince prejudice, partiality or corruption in the jury, and, therefore, overruled the motion.   The case went to the court of appeals, and is reported in 14 N. Y., 310.   It was there quite distinctly intimated that the damages were excessive, though it was beyond the power of that court to correct it.   Yet here a little girl was killed, and there is no proof that she possessed any unusual talent or accomplishment whatever; yet the verdict is almost three times as much as it was in that case.

In the *case of Barron*, before cited from 5 Wallace, the person killed was a man in the prime and vigor of life, who had been judge of Cook county, Illinois, and was engaged in the practice of the law, in which his income, prior to going upon the bench, had been $3,000 per annum.   Yet the verdict in that case was less than it is in this.

In the *City of Chicago v. Major*, before cited, the action was for the death of a boy four years old, and the verdict was $800.

I have found no case where a verdict approaching the proportions of this, has been rendered on similar facts.

It was suggested by the counsel for the plaintiff, that if we should deem the damages excessive, we might indicate

the amount of excess, and allow it to be remitted, and then affirm the judgment. There are some cases where that practice has been adopted on motions for a new trial. This court has adopted it on appeal or writs of error, where there was a portion of the judgment illegal, but which, however, was readily severable from the rest and clearly ascertained by the record. But it has decided that where such was not the case, it would not substitute its judgment for that of the jury, and allow the party to remit accordingly, and then affirm the judgment. *Nudd v. Wells,* 11 Wis., 415. See also *Cromwell v. Wilkinson,* 18 Ind., 369; *Odlin v. Gove,* 41 N. H., 478.

I deem it proper, however, in reversing the judgment upon this ground, for the court to indicate the amount beyond which it thinks a verdict ought not to be upheld. Otherwise it might require a great number of trials in order to get at the exact views of this court upon that point.

In the case of *McIntyre v. The N. Y. Central Railroad Co.,* 47 Barb., 515, a woman forty-eight years old having been killed, and it being found that she was an intelligent, industrious woman, strong and healthy, and could readily earn a dollar per day besides her board, the jury found a verdict of $3,500. The court, on a motion for a new trial, required the plaintiff to remit $2,000, so as to reduce the verdict to $1,500, and then overruled the motion.

In this case I shall not attempt to indicate what the verdict should be upon the evidence. But I will say that I think a verdict exceeding $2,000 ought to be set aside by the court, upon the rule hereinbefore adopted.

*By the Court.*—The judgment is reversed, with costs, and the cause remanded for a new trial.