BOYCE, Respondent, vs. WILBUR LUMBER COMPANY, imp.,
Appellant.

*November 17—December 11, 1903.*

*Negligence: Injury to person switching cars: Court and jury: Evidence: Custom: Obviously dangerous act: Special verdict: Instructions: Proximate cause.*

1. Plaintiff, a railroad yardmaster, while switching cars in the nighttime, was riding upon the ladder on the side of a freight car and was knocked therefrom by a car upon an adjoining switch track, which, after being placed upon such track, had been moved by the defendant lumber company to a point nearer where the two tracks came together. The evidence being conflicting as to the width of the cars and whether the two tracks were at any place far enough apart so that a person riding as plaintiff was could pass the other car without injury, it is *held* that the lumber company was not entitled to the direction of a verdict on the ground that it did not, by moving the car, increase the danger.

2. As a general rule, evidence to show the usual or ordinary methods of others in the same business is admissible upon the question of negligence; but this rule is subject to exceptions, among which are that such evidence cannot be allowed to contradict common knowledge, nor is it admissible to prove a custom which is so obviously dangerous to life and limb as to be at once recognized as such by all intelligent persons. *Colf v. C., St. P., M. & O. R. Co.* 87 Wis. 273, so far as it conflicts herewith, overruled.

3. The act of a brakeman or yardmaster in riding upon the ladder on the side of a freight car in the course of switching operations is not so obviously dangerous as to preclude proof that it is customary.

4. Where the questions submitted for a special verdict covered all the material issues of fact, the refusal to submit other questions was not error.

5. Upon the question whether plaintiff was guilty of negligence which contributed proximately to the injury, it was error to charge the jury that "proximately" in that connection means materially or efficiently.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This is an action to recover for personal injuries. The action was originally brought against the appellant and the Chicago, Milwaukee & St. Paul Railway Company as defendants, but upon the trial the plaintiff was nonsuited as to the railway company, and no appeal has been taken from that judgment.

It appeared by the testimony upon the trial that three railway companies operate yards and switch tracks at the cities of Neenah and Menasha, to wit, the Wisconsin Central, the Chicago, Milwaukee & St. Paul, and the Chicago & Northwestern, and that their various switch tracks are connected by a track owned by the Chicago, Milwaukee & St. Paul Company, but over which all the companies do switching, which track runs east and west on the south side of the United States canal, and is called the "lead track;" that just south of the lead track, and parallel therewith, is a switch track several hundred feet in length, called the "Menasha Paper Company track;" that this last-named track branches off from the lead track by a switch, and that the distance between the centers of the two tracks is eleven feet and three inches, except where the switch track approaches the lead track at the west end, where the distance gradually diminishes until the two tracks join at the switch; that the *Wilbur Lumber Company* has a yard where it receives logs from cars immediately south of the west end of the switch track, where the same approaches the lead track; that, at the time of the accident on which the suit was founded, the plaintiff was night yardmaster for the Wisconsin Central Railway at Neenah and Menasha, and had been such for a number of years; that on the morning of August 7, 1902, a switch crew in the employ of the Chicago, Milwaukee & St. Paul Railway placed a Chicago & Northwestern coal car or gondola car loaded with logs, and consigned to the appellant, on said switch track, and left it at a point where the tracks are eleven feet and three inches distant from center to

center; that during the day employees of the appellant moved this car westward on the switch track to a point where the switch track was approaching the lead track and the distance from center to center of the two tracks was but ten feet; that said employees commenced to unload the car at that point, and left it there when they quit work at night; that at about 2 o'clock on the following morning the plaintiff, with a switching crew, was engaged in switching certain cars, and approached the lead track from the west with a string of eleven or twelve freight cars, the engine being in front, and he being on the ladder on the south side of a woodenware car at about the middle of the train. Plaintiff claims that as the train went east upon the lead track, and was passing the switch track, he was knocked from the side of the car, owing to the close proximity of the gondola car, and was seriously injured. That he was injured at the time and place in question, there is no dispute, the other train employees testifying that they found him upon the ground at the point in question, moaning and seriously injured, and his lantern broken.

The jury returned the following special verdict:

"(1) Was the plaintiff injured at the time and place alleged in the complaint? *Answer.* Yes. (2) Was the defendant, through its employees, guilty of negligence in leaving the gondola car at the point upon the side track where the injury, if any, occurred? *A.* Yes. (3) If you answer the last question 'Yes,' then was such negligence on the part of the defendant the proximate cause of plaintiff's injury, if he was injured? *A.* Yes. (4) Was the plaintiff guilty of negligence which contributed proximately to the injury? *A.* No. (5) If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess his damages? *A.* $1,000."

Judgment for the plaintiff was rendered upon this verdict, and the *Wilbur Lumber Company* appeals.

For the appellant there was a brief by *Ryan, Merton & Newbury,* and oral argument by *E. Merton.*

For the respondent there was a brief by *Eaton & Weed* and *L. K. Eaton,* attorneys, and *Frederic J. Eaton,* of counsel, and oral argument by *L. K. Eaton.*

WINSLOW, J. The appellant claims that a verdict should have been directed in its favor upon the undisputed evidence. This claim is based upon the fact that the two tracks at their widest distance apart are but eleven feet and three inches from center to center, and that it appears from measurements of similar cars made by one of the witnesses that, even if the gondola car stood at the widest point, there would not have been room for a person riding where the plaintiff was riding to pass without injury. From these premises it is said that the appellant must be discharged, because it did not build the tracks, and because the moving of the gondola car by its employees did not increase the danger. The difficulty with the proposition is that the testimony as to the width of the cars and the distance between them is not undisputed. It is true that the witness Powrie measured a gondola car and a tall woodenware car, which, from *Boyce's* description, he thought were the same kind of cars that figured in the accident; and from these measurements it would appear that there was not sufficient room for such cars to pass with safety to one riding on the ladder at any point on the switch. But the difficulty is that the two cars themselves were never measured, and it cannot be said that it was conclusively shown that the cars which Powrie measured were of identical width with those in question. Again, there was considerable testimony that the cars in question were of the same width as ordinary cars, and that the distance between ordinary cars at the widest distance between the two tracks would be between twenty-two and twenty-three inches, whereas at the point where the accident occurred it would be but seven or eight inches. So it is clear that it cannot be said, as a matter of law, either that the accident would have hap-

pened in any event, wherever the cars stood, or that the plaintiff assumed the risk.

Testimony was admitted, under objection and exception, to the effect that it was customary for yardmasters and switchmen upon railroads to ride upon the ladders of freight cars while setting in and taking out cars from the switch tracks in the yards, and error is claimed in this ruling. The question as to the admissibility of evidence of customary methods of doing business, as bearing on the question of negligence, either original or contributory, has been much discussed, and the decisions even in this state are not entirely harmonious. Inasmuch as negligence ordinarily consists simply of lack of ordinary care, and ordinary care is that care which the great majority of people are accustomed to exercise under the same or similar circumstances, it was, in substance, held in *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671, that in determining whether an employer was negligent in furnishing an unsafe place to work, because of the proximity of uncovered machinery, the test was whether the defendant had come up to the standard of employers generally in the same business and under similar circumstances, and this test has been approved several times since that decision was rendered. *Innes v. Milwaukee,* 96 Wis. 170, 70 N. W. 1064; *Prybilski v. N. W. C. R. Co.* 98 Wis. 413, 74 N. W. 117; *Kreider v. Wis. River P. & P. Co.* 110 Wis. 645, 86 N. W. 662. While the question of the admissibility of evidence to show the usual or ordinary methods of others in the same business was not directly raised in these cases, it is very manifest that the legal principle adopted, and which must be considered as settled, necessarily calls for the admission of just such evidence; and in *Pier v. C., M. & St. P. R. Co.* 94 Wis. 357, 68 N. W. 464, it was said that the customary way of doing certain things in a railroad switch-yard was a fact proper to be considered in determining the question of negligence of an employee while doing those

things. In *Jochem v. Robinson,* 72 Wis. 199, 39 N. W. 383, and *Nadau v. White River L. Co.* 76 Wis. 120, 43 N. W. 1135, it was directly held that evidence of the customary manner of doing certain things was competent on the question of negligence of a party to the action, where the doing of those things was involved.

On the other hand, in the case of *Propsom v. Leatham,* 80 Wis. 608, 50 N. W. 586, where the question was whether a lumber dock was negligently defective, so as to be dangerous to employees, it was held that evidence as to how it compared with other docks used for the same purposes was incompetent; and in *Molaske v. Ohio Coal Co.* 86 Wis. 220, 56 N. W. 475, where the question was whether the defendant was negligent in employing a boy twelve years of age to give signals for the hoisting of coal buckets upon a coal dock, it was held that no custom or usage of employing boys of such tender years in such a position could be upheld. Again, in *Colf v. C., St. P., M. & O. R. Co.* 87 Wis. 273, 58 N. W. 408, where the question was whether a brakeman was negligent in jumping from a moving engine in the freightyard, it was held that evidence of a custom on the part of employees in the yard to jump from moving engines was not admissible; and in *Simonds v. Baraboo,* 93 Wis. 40, 67 N. W. 40, while the general rule that evidence of custom is admissible on the question of negligence was recognized, it was held that it was not admissible as to acts the manner of doing which is matter of common knowledge, and this rule was quoted approvingly in *Crouse v. C. & N. W. R. Co.* 104 Wis. 473, 80 N. W. 752. In *Dorsey v. Phillips & C. C. Co.* 42 Wis. 583, it was questioned whether a custom on the part of railway companies to locate structures so near the track as to be necessarily dangerous to employees could be held to excuse the danger, while in *Mulcairns v. Janesville,* 67 Wis. 34, 29 N. W. 565, evidence of a custom as to the bracing of cistern walls was held inadmissible because it was not spe-

cially directed to a cistern wall of the kind under considera-
tion,

While these cases can hardly be considered as entirely in
accord, it seems clear that the general rule that evidence of
the general business custom is admissible upon the question
of negligence is well recognized in this state, as stated in
*Simonds v. Baraboo, supra,* but that it is subject to excep-
tions, among which are that it cannot be allowed to contra-
dict common knowledge, nor is it admissible to prove a cus-
tom which is so obviously dangerous to life and limb as to
be at once recognized as such by all intelligent persons. *In-
nes v. Milwaukee,* 96 Wis. 170, 70 N. W. 1064. Under this
rule, all the cases cited may perhaps be substantially har-
monized, unless it be the *Colf Case;* and, so far as that case
disagrees with the conclusion now reached, it must be con-
sidered as overruled. It cannot be said that the act of a
brakeman or yardmaster in riding on the ladder on the side
of a freight car in the course of switching operations is such
an obviously dangerous act as to preclude proof that it is
customary. Therefore the evidence in question was properly
received.

Exception was taken because the trial court refused to sub-
mit certain questions to the jury as part of the special ver-
dict. We do not regard it necessary to set forth the ques-
tions at length. The questions of the verdict, framed by the
court, which were actually submitted and answered, covered
all the material issues of fact in the case, and hence there
can be no error assigned upon the refusal to submit other
questions.

A general objection is made to the charge on the ground
that it was practically a general charge and informed the
jury as to the effect of their answers to the questions of the
verdict. It is sufficient, upon this contention, to say that
it is entirely unwarranted. The trial judge carefully re-

frained from informing the jury in any way as to the effect of their answers upon the litigation.

In submitting the third question to the jury, the trial court defined "proximate cause" at length and with substantial accuracy, as it has been defined in the decisions of this court; but when he proceeded to the fourth question, touching the alleged contributory negligence of the plaintiff, he charged as follows:

"'Proximately,' in that connection, means materially, or was it one of the efficient causes which operated to produce the injury? This question, you will notice, gentlemen, is directed to the conduct of the plaintiff himself. Was the plaintiff guilty himself of negligence which contributed proximately to the injury? and, in answering the question above—the third question—you will necessarily have to consider this question more or less, because it is contended by the defendant that the plaintiff himself was guilty of negligence; that he knew, or ought to have known, that cars were liable to be upon this side track at any moment; and that he knew, or ought to have known, that it was dangerous for him to ride upon that ladder upon the side of the woodenware car, and that it was negligence upon his part to do so, and that such negligence did contribute to the injury; that, if it was not the primary and proximate cause, that it at least was a cause which contributed materially and proximately to the injury. Now, that is a question for you to determine from all the evidence—Was the plaintiff in the exercise of ordinary care and prudence in riding upon the side of this car, or, on the other hand, was he guilty of negligence in so doing?"

We cannot but regard this instruction as distinctly erroneous and prejudicial. The first sentence, to the effect that "proximately," in this connection, means materially or efficiently, is a clear and unmistakable intimation, if not a direct statement to the jury, that there is a difference between the meaning of the word when applied to the defendant and when applied to the plaintiff. There is no such differ-

ence. Contributory negligence on the part of the plaintiff must bear the same proximate relation to the result as the actionable negligence of the defendant. It need not be the sole cause, and it may contribute but slightly, but it must be a proximate cause in the same sense that the defendant's negligence must be proximate. This subject was fully discussed in *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816, and further discussion here is scarcely necessary. It is erroneous to define "proximate," in this connection, as meaning efficient or material, as has been repeatedly held by this court. There is but one safe way to define "proximate cause," and that way should be adopted when a definition becomes necessary. As indicated in *Mauch v. Hartford, supra,* the better form of question upon this subject is substantially as follows: "Did want of ordinary care on the part of the plaintiff contribute to produce the injury?" When this question is given, followed by proper instructions as indicated. in the case last cited, there will be no error. It has been directly held that it is erroneous to charge a jury that the negligence of the plaintiff, in order to defeat the action, must "materially" contribute to produce the injury, because this instruction gives opportunity to the jury to say that, while it contributed slightly, it did not contribute materially, and thus the salutary rule that contributory negligence in any degree will defeat the plaintiff may be frittered away. *Ohio City F. S. Co. v. Boundy,* 122 Pa. St. 449, 15 Atl. 865; *Mattimore v. Erie,* 144 Pa. St. 14, 22 Atl. 817. We have found no other prejudicial errors.

*By the Court.*—Judgment reversed, and action remanded for a new trial.