STASEK, Administrator, Appellant, vs. BANNER COFFEE COM-
PANY, Respondent.

*October 25, 1916—January 16, 1917.*

*Poisons: Sale: Negligence: Delivery of matches: Death of child: Spe-
cial verdict: Changing findings.*

1. Sec. 1419, Stats., regulating the sale of poisonous drugs and chem-
   icals and requiring that packages containing them be labeled
   "poison," does not apply to the sale of articles of merchandise,
   such as phosphorous matches, in which some poisonous drug or
   chemical may have been used.
2. Where phosphorous matches were delivered by a grocery com-
   pany with other goods at a dwelling in the manner in which
   such deliveries were customarily made under similar circum-
   stances, and the company could not have anticipated injury to
   another by reason of the delivery in such manner, it was not
   guilty of any negligence rendering it liable for the death of a
   child who opened the package and ate off the heads of some of
   the matches.
3. Where in an action for death alleged to have been caused by neg-
   ligence the jury found specifically facts which absolutely nega-
   tived actionable negligence, the trial court properly changed or
   set aside other findings in the verdict to the effect that defend-
   ant was negligent and that such negligence was the proximate
   cause of the death.

APPEAL from a judgment of the circuit court for Milwau-
kee county: W. J. TURNER, Circuit Judge. *Affirmed.*

The action is for damages on account of the death of the
plaintiff's daughter and intestate aged about two years and
three months, resulting, as alleged, from the negligence of the
defendant. The facts were that in 1912 the plaintiff with
his family occupied the second floor of a double house in Mil-
waukee, and one Jahnke with his family the first floor. The
upper floor had no front entrance, and the rear entrance,
which opened into a small hall on the first floor, was used by
both families. There was a small platform about three feet

square in the hall. The defendant dealt in coffee, groceries, and other merchandise in Milwaukee and Mrs. Jahnke had been its customer. On the afternoon of the 24th day of July, 1912, the defendant delivered and left in said rear hall some merchandise consisting of coffee, soap, and matches, each article done up in a separate package, on said platform for Mrs. Jahnke, she not being at home. The defendant claims the goods were ordered by Mrs. Jahnke, but she denies the fact. The plaintiff claims that the goods were so left in the presence of his two children (the deceased and another girl about four years of age), who were playing in the hall. The defendant, however, claims that no one was in the hall or about the premises. While the packages were in the hall the children got hold of them and the intestate opened the package containing matches and ate off the yellow phosphorus heads of nine or ten matches, from the effects of which she died about a week later. There were six boxes of matches in the package and there was no poison label on the package or on the boxes themselves. The plaintiff claimed a common-law liability on the ground of negligence, as well as a statutory liability because of the failure to comply with the requirements of sec. 1419, Stats. 1913, regulating the sale of poisonous drugs and chemicals and requiring that the package containing them be labeled "poison."

The jury found by special verdict (1) that the defendant in the exercise of ordinary care ought not to have anticipated injury to another by reason of the delivery of the matches in the manner in which they were delivered; (2) that such delivery was made in the manner customary in Milwaukee under similar circumstances; (3) that the defendant did not exercise ordinary care in making the delivery as it did; (4) that such failure to exercise ordinary care was the proximate cause of the death of the intestate; (5) that the merchandise was not delivered pursuant to an order by Mrs.

Jahnke; (6) that no failure to exercise ordinary care on the part of the mother of the deceased proximately contributed to the death of the intestate; (7) that the damages for loss. of services amounted to $850, and (8) for the pain and suffering of the deceased amounted to $650. The court on motion changed the answer of the third question of the verdict so that it became a finding that the defendant exercised ordinary care in making the delivery, struck out the answer to the fourth question, and entered judgment for the defendant as so amended. From this judgment the plaintiff appeals.

*W. C. Seefeld,* for the appellant.

For the respondent there was a brief by *Churchill, Bennett & Churchill,* and oral argument by *W. H. Churchill.*

The following opinion was filed November 14, 1916:

Winslow, C. J. The judgment must be affirmed. The statute regulating the sale of poisonous drugs and chemicals plainly does not apply to the sale of articles of merchandise in whose manufacture some poisonous drug or chemical may have been incidentally used. To so hold would be to extend the act by construction to cases manifestly not intended to be covered by it.

When the jury found that the packages were delivered in the manner in which such deliveries were customarily made, and that the defendant could not have anticipated that injury would happen to another by reason of the manner of the delivery, they found the facts which absolutely negatived actionable negligence. These findings of fact necessarily control the question of ordinary care and justify the court in changing the answer to the third question of the verdict and striking out the answer to the fourth question. If the delivery was made in the usual and customary way under similar circumstances, it follows that ordinary care was exercised unless such custom is so obviously dangerous to life or limb

as to be recognized as such by all intelligent people.  *Bande-kow v. C., B. & Q. R. Co.* 136 Wis. 341, 117 N. W. 812.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., took no part.

A motion for a rehearing was denied, with $25 costs, on January 16, 1917.